IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| QUENTIN CRABTREE, )<br>Individually and on behalf of others )<br>similarly situated, ) | Case No. |
| Plaintiff, ) | |
| v. ) | |
| Experian Information Solutions, Inc. ) | |
| Defendant. ) | |

## CLASS ACTION COMPLAINT

Plaintiff, Quentin Crabtree, files this class action complaint, seeking statutory damages for willful violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681 *et seq.*, against Experian Information Solutions, Inc. Mr. Crabtree brings this lawsuit based upon the illegal sale of his private credit report information for impermissible marketing purposes.[1]

### PARTIES

1. Defendant Quentin Crabtree resides in Cook County, Illinois, and is a citizen of Illinois.

2. Defendant Experian Information Solutions, Inc. ("Experian") is a corporation doing business in Illinois. Experian can be served through its registered agent, CT Corporation System, 208 S LaSalle St., Ste 814, Chicago, IL 60604.

---

[1] Mr. Crabtree's allegations are made on personal knowledge as to his experiences and upon information and belief based on the investigation of his counsel as to the other matters.

1

## JURISDICTION AND VENUE

3. This Court has federal question jurisdiction under 28 U.S.C. § 1331, because this action arises under 15 U.S.C. § 1681, et seq. This Court also has diversity jurisdiction over this case under 28 U.S.C. §1332(d)(2) because this is a class action in which the amount in controversy exceeds $5,000,000, and there are members of the Class who are citizens of a different state from Defendant.

4. A substantial part of the events giving rise to Plaintiff's claims occurred in the Chicago area, Lake County, Illinois. Venue is therefore appropriate in the Northern District of Illinois under 28 U.S.C. § 1391.

## STATUTORY BACKGROUND OF THE FCRA

5. The FCRA is a comprehensive scheme designed to safeguard the privacy of consumers' credit information. It became effective in 1971 and has been in force since that date.

6. The FCRA governs the reporting, use, and sale of information bearing on consumers' creditworthiness. A key component of Congress' oversight is the requirement that consumer reporting agencies ("CRAs") may furnish consumer reports only for the purposes enumerated in the statute ("Permissible Purpose"). These Permissible Purposes include, among others, use of the information: (1) to verify the consumer's creditworthiness in connection with a credit transaction; (2) to verify eligibility for employment; (3) in connection with underwriting of insurance for the consumer; and (4) in connection with a transaction initiated by the consumer; as well as other legitimate business needs for the information. 15 U.S.C. § 1681b(a)(1) – (6).

7. Under the FCRA, consumers' private information bearing on creditworthiness may not be used without their consent for marketing or promotional purposes other than those specifically enumerated in the FCRA for firm offers of credit.

8. In order to ensure that CRAs furnish consumer reports only in accordance with section 1681b, Congress established compliance procedures in 15 U.S.C. §1981e. Section 1681e requires CRAs to "maintain reasonable procedures designed to … limit the furnishing of consumer reports to the purposes listed under [§1681b]."

9. Before providing consumer reports to a new user of consumer reports the CRA must make reasonable efforts to verify the user's identity and to verify that the user has a permissible use for obtaining a consumer report. If a CRA has reasonable grounds to believe a user will not use a report for a Permissible Purpose, it may not furnish a consumer report.

10. 15 U.S.C. §1681e(e) imposes requirements on persons who procure consumer reports for resale. It requires those persons to certify to the CRA that the end users of the reports are using them for a Permissible Purpose and also to establish reasonable procedures designed to ensure that the persons to whom they are reselling the consumer reports will use them for a Permissible Purpose.

11. 15 U.S.C. §1681n imposes statutory damages for any willful violation of the statute.

## FACTUAL ALLEGATIONS

**A. Experian's relationship with Western Sierra Acceptance Corporation.**

12. In 2002, Experian entered into a Prescreening Services Agreement with Western Sierra Acceptance Corporation ("Western Sierra") dated September 17, 2002 (the "Agreement"). Pursuant to the Agreement Experian furnished Western Sierra consumer reports so that Wester Sierra could make legitimate firm offers of credit to consumers.

13. Western Sierra had a Permissible Purpose under 15 U.S.C. §1681b(9) of the FCRA to receive consumer reports pursuant to the Agreement.

14. Promotional inquiries are permissible under the FCRA only when the purchaser intends to make a "firm offer of credit or insurance" to consumers. 15 U.S.C. § 1681(c)(1)(B)(i).

15. When making promotional inquires pursuant to the Agreement Western Sierra intended to make firm offers of credit to consumers.

16. Whenever pursuant to the Agreement Experian would furnish a consumer report to Western Sierra to make a firm offer of credit to a consumer Western Sierra's name would appear on the consumer's report as having made a "soft pull" of that consumer's report for the purpose of a promotional inquiry.

17. On October 17, 2011, Experian terminated the Agreement effective November 18, 2011. (See, Exhibit A, Experian's October 17, 2011 termination letter to Western Sierra).

18. As of November 18, 2011, Experian stopped furnishing consumer reports to Western Sierra.

**B. Experian unlawfully furnished consumer reports to entities using the Western Sierra name for impermissible marketing purposes.**

19. Data by Integrated Marketing Services ("Data by IMS") is an Ohio limited liability company. Data by IMS purchased lists of consumer information from Experian, either directly or through an agent of Experian, for the purpose of reselling the information.

20. After November 18, 2011, Experian furnished consumer reports to customers of Data by IMS who lacked Permissible Purposes for the reports. In so doing Experian allowed Data by IMS to use the Western Sierra name for those entities so the Western Sierra name would appear on the reports of those consumers as the entity which made the promotional inquiry for the purpose of a firm offer of credit. Upon information and belief Data by IMS'

4

customers were debt settlement or debt consolidation companies targeting consumers with financial difficulties to solicit them with promises to help relieve them from debt.

21. After November 18, 2011, Experian furnished tens of thousands of consumer reports on people throughout the United States to Data by IMS customers to make bogus firm offer of credit promotional inquiries using the Western Sierra name.

22. Upon information and belief, after November 18, 2011, Experian failed to require Data by IMS and its customers to certify that they were using the reports for Permissible Purposes.

23. After November 18, 2011, Experian knew that promotional inquiries for firm offers of credit from any entity using the "Western Sierra" name were illegitimate and those requesting the reports did not have a Permissible Purpose to use those consumer reports.

**C. Experian sold private credit information to companies that operate predatory debt settlement businesses.**

24. Debt settlement or debt consolidation companies target consumers with financial difficulties and solicit them with promises to help free them from debt. In many cases, however, a debt settlement company will require a consumer to deposit money in a special savings account for a period of time during which the company will claim to be settling the consumer's debt. During this time, debt settlement companies often direct consumers to stop sending payments directly to creditors, negatively impacting the consumer's credit rating, causing interest and fees to grow, and sometimes leading to collection actions against the consumer. Because creditors have no obligation to agree to negotiate a settlement of the amount owed, debt settlement companies are often unable to settle all of a consumer's debts, even if the consumer complies fully with the program and makes all of the required payments.

25. The debt settlement business is well-known for spawning scams that prey on vulnerable consumers. Because of the large number of scams and disreputable businesses in the debt settlement industry, the Federal Trade Commission ("FTC") advises consumers to check with their state Attorney General and local consumer protection agencies, as well as doing online research and getting extensive up-front information about the company's services and fees before doing business with any debt settlement company. See FTC, Settling Credit Card Debt, *available at* http://www.consumer.ftc.gov/articles/0145-settling-credit-card-debt.

26. Upon information and belief when after November 18, 2011 Experian sold consumers' private credit information to entities who made promotional inquiries for firm offers of credit using the "Western Sierra" name Experian knew that they were debt settlement or debt consolidation companies that could not extend firm offers of credit to consumers and did not have Permissible Purposes for the reports.

**D. Experian failed to use reasonable procedures to ensure consumers' reports were sold only for Permissible Purposes.**

27. Experian failed to use reasonable procedures to ensure that Data by IMS customers would not use consumers' information for impermissible purposes. Because Experian terminated the Agreement with Western Sierra effective November 18, 2011, Experian knew that if any time after that date it furnished a consumer report to an entity whose name "Western Sierra" appeared on the consumer's report as a promotional inquiry for a firm offer of credit, that entity could not have certified to Experian that it had a Permissible Purpose for the report and therefore lacked such Permissible Purpose.

28. As a direct and proximate cause of Experian's failure to use reasonable procedures to ensure his information would not be used for impermissible purposes, Mr. Crabtree has suffered

an unwarranted invasion of his privacy, which may expose him to additional improper uses of the consumer report or his personal identification information.

29. Experian illegally released Mr. Crabtree's, and others similarly situated, information in consumer reports to other people causing him embarrassment and anxiety.

30. Experian has illegally furnished thousands of consumer reports under false pretenses to entities which have used them for impermissible purposes such as to solicit consumers for debt settlement or consolidation businesses.

**E. Experian acted willfully.**

31. Experian is one of the largest CRAs in the United States.

32. As a nationwide CRA, at the time it provided consumer reports to entities with impermissible purposes Experian was well aware that it was subject to the mandates and requirements of the FCRA prohibiting the same, and knew or should have known that doing so violated the FCRA.

33. Experian has written internal guidance documents that apprised it of its duty under the FCRA to not to allow access to consumer reports by those without permissible purposes.

34. Despite its knowledge of these legal duties, Experian acted consciously in breaching its known duties and depriving Mr. Crabtree and the Class members of their rights under the FCRA.

35. Experian knew or should have known that the FCRA requires consumer reporting agencies such as Experian to "maintain reasonable procedures designed to avoid violations of …[§1681b] of [the FCRA]" and to ensure those procedures "require that prospective users of the information identify themselves, certify the purposes for which the information is

sought, and certify that the information will be used for no other purpose" under 15 U.S.C. §1681e(a).

36. Experian knew or should have known that it was required, under 15 U.S.C. §1681e(a), (1), to "make a reasonable effort to verify the identity of a new prospective user and the uses certified by such prospective user prior to furnishing such user a consumer report," and (2) not to furnish a consumer report to any person if it had "reasonable grounds for believing that the consumer report will not be used" for a Permissible Purpose.

37. Experian also knew or should have known that it was required, under 15 U.S.C. §1681g, to disclose the identity of all persons who had procured a consumer report for any purpose within the year preceding the consumer's request.

38. Experian knew that after November 18, 2011, those using consumer reports for promotional inquiries in connection with firm offers of credit under the name Western Sierra were not using the consumer reports or any FCRA Permissible Purpose.

39. Experian acted willfully in concealing from consumers that it had delivered consumer reports to entities using the Western Sierra name, rather than providing the true name of those entities to consumers who request copies of their files under 15 U.S.C. § 1681g(a)(3).

40. As a result of these FCRA violations, Experian is liable to Plaintiff and similarly situated individuals for statutory damages from $100 to $1,000 pursuant to 15 U.S.C. §1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. §1681n(a)(2), as well as attorneys' fees and costs pursuant to Sections 1681n and 1681o.

## CLASS ALLEGATIONS

41. Mr Crabtree brings this action on behalf of himself and a Class of persons similarly situated under Rule 23, for the following:

8

> All natural persons within the United States (including all territories and other political subdivisions of the United States) whose consumer reports were furnished by Experian on or after November 18, 2011 to entities purporting to make firm offers of credit using the Western Sierra name.

Excluded from the class definition are any employees, officers, or directors of any of the Defendants, any attorneys appearing in this case, and any judges assigned to hear this case as well as their immediate family and staff.

42. **Numerosity**. The Class members are so numerous that joinder of all is impractical under Fed. R. Civ. P. 23(a)(1). Experian sold the consumer reports of thousands of individuals, and it would not be practical for all of these injured parties to bring suit individually. Class members may be notified of this action by first-class mail, supplemented, if the Court deems advisable, by published notice.

43. **Existence and Predominance of Common Questions.** Common questions of law and fact exist as to all Class members and predominate over any individual questions under Fed. R. Civ. P. 23(a)(2) and 23(b)(3). These common questions include whether:

    a) Experian furnished Class members' consumer reports to entities using the Western Sierra name after November 18, 2011;

    b) Experian knew or should have known that promotional inquiries in connection with firm offers of credit purporting to be from Western Sierra after November 18, 2011 were not for a Permissible Purpose in accessing and using Class members' consumer reports;

    c) Experian did not have reasonable grounds for believing end users of consumer reports it furnished for purportedly promotional purposes would use those reports to extend a firm offer of credit;

    d) Experian should have discovered, through the establishment and implementation of reasonable procedures, that end users of consumer reports it furnished after November 18, 2011 using the Western Sierra name did not intend to use those reports for legitimate promotional purposes or to extend firm offers of credit;

    e) Experian implemented and maintained reasonable procedures to limit the provision of Class members' consumer reports to purchasers with a Permissible Purpose.;

    f) Experian failed to properly disclose to consumers requesting their reports the identity of each person who procured that report as Experian's agent and/or for resale during the one-year period preceding the request; and

    g) Experian conduct was willful.

44. **Typicality.** Mr. Crabtree's claims are typical of the claims of the Class members under Fed. R. Civ. P. 23(a)(3) because all Class members, like Mr. Crabtree, had their personal information unlawfully accessed without any FCRA Permissible Purpose. All Class members, like Mr. Crabtree, had their right to know the identities of persons who had procured copies of their consumer reports violated. Mr. Crabtree has suffered similar injuries to those of the members of the Class he seeks to represent. Mr. Crabtree bases his claims, and those on behalf of the Class, upon the same legal and remedial theories and is entitled to relief under the same causes of action and upon the same facts as other Class members.

45. **Adequacy.** Mr. Crabtree is an adequate Class representative under Fed. R. Civ. P. 23(a)(4) because he will fairly and adequately protect the interests of all Class members in the prosecution of this action and in the administration of all matters relating to the claims in this case. Mr. Crabtree has retained counsel experienced in handling FCRA class action

suits. Neither Mr. Crabtree or his counsel have any interest which might cause them not to vigorously pursue this action.

46. **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of the controversy under Fed. R. Civ. P. 23(b)(3) because liability will be determined based on common facts and legal theories, and the damages sought are such that individual prosecution would prove burdensome and expensive for the litigants and the courts. Because of the complex and extensive litigation necessitated by Defendants' conduct, it would be virtually impossible for the Class members individually to effectively redress the wrongs done to them. In addition, individual litigation would present a potential for inconsistent or contradictory judgments and increase the delay and expense to the parties and the court system. By contrast, the class action procedure will result in substantial benefits to the parties and the Court by allowing the Court to resolve numerous individual claims based on a single set of proof.

47. **Injunctive Relief**. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted on grounds generally applicable to the Class, making equitable or declaratory relief appropriate.

## CAUSES OF ACTION

### COUNT I – VIOLATIONS OF 15 U.S.C. §§ 1681b, 1681e(a)

48. Mr. Crabtree incorporates by reference all preceding paragraphs as through fully stated here.

49. Experian sold the consumer reports of Mr. Crabtree and the other Class members to others in violation of the FCRA, 15 U.S.C. §1681b(a) and 1681e(a).

50. Experian knew or should have known that the prospective use of reports by others was not for a Permissible Purpose under §1681b. Since Experian terminated the Agreement with Western Sierra as of November 18, 2011, it knew or should have known that consumer reports being accessed under the Wester Sierra name after that date were not being used for a Permissible Purposes under §1681b.

51. Experian failed to implement and maintain reasonable procedures to limit the provision of the consumer reports of Mr. Crabtree and the Class members to a section 1681b Permissible Purpose.

52. Experian failed to make a reasonable effort to verify the identities and the uses of the consumer reports by Data by IMS customers prior to it furnishing the consumer reports of Mr. Crabtree and the Class members.

53. Experian sold the consumer reports to Data by IMS, who it knew or in the exercise of reasonable diligence should have known, would resell the reports for purposes not permitted by the FCRA.

54. Experian willfully and recklessly disregarded their duties under 15 U.S.C. §§1681b and 1681e(a) to prevent misappropriation and misuse of the private and protected credit information of Mr. Crabtree and the Class members. Experian's sale of the consumer reports described herein carried an unjustifiably high risk of harm that was either known or so obvious that it should have been known. Even a minimal level of diligence would have discovered that the lists were not being used for a Permissible Purpose.

55. Upon information and belief Experian's failures resulted in the unlawful use of Class members' credit information to target consumers for impermissible purposes such as debt settlement marketing solicitations or other impermissible marketing purposes.

56. Experian is liable to Mr. Crabtree and the Class members for statutory damages, punitive damages, and attorneys' fees and costs pursuant to 15 U.S.C. §1681n.

## PRAYER

Mr. Crabtree, on his own behalf and on behalf of the Class, prays for relief against Defendants including:

a) An order certifying the Classes under Fed. R. Civ. P. 23 and appointing Mr. Crabtree and his counsel to represent the Classes;

b) Statutory damages under 15 U.S.C. §1681n;

c) Punitive damages

d) Pre-judgment interest from the date of filing this lawsuit;

e) Reasonable attorneys' fees;

f) Costs of this proceeding;

g) Equitable and declaratory relief; and

h) All other relief to which Mr. Crabtree and the Class members may be justly entitled.

## JURY DEMAND

Mr. Crabtree demands a trial by jury.

Dated: November 17, 2016

 Respectfully submitted,

 QUENTIN CRABTREE,
 Individually and on behalf of others
 similarly situated


 By: /s/ Joseph S. Messer
 Joseph S. Messer
 Messer Strickler, Ltd.
 225 W. Washington St. Ste. 575
 312-334-3469
 312-334-3434 (fax)
 IL # 6200036
 jmesser@messerstrickler.com

**CERTIFICATE OF SERVICE**

I hereby certify that on November 17, 2016 I electronically filed the foregoing with the Clerk of the District Court using the CM/ECF system, which will send notification of such filing to the attorneys of record.

By: /s/ Joseph S. Messer
Joseph S. Messer
Messer Strickler, Ltd.
225 W. Washington St. Ste. 575
312-334-3469
312-334-3434 (fax)
IL # 6200036
jmesser@messerstrickler.com
