UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| QUENTIN CRABTREE | ) | |
| Individually and on behalf of others | ) | |
| similarly situated. | ) | Case No. 1:16-CV-10706 |
| | ) | |
| Plaintiff, | ) | Hon. Charles R. Norgle, Sr. |
| | ) | |
| v. | ) | |
| | ) | |
| Experian Information Solutions, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S MOTION TO COMPEL

Plaintiff Quentin Crabtree, individually and on behalf of others similarly situated, respectfully requests that this Court enter an order compelling Defendant Experian Information Solutions, Inc. ("Experian") to further respond to Plaintiff's First Set of Requests for Production of Documents. In support of this motion, plaintiff states:

## CONFERENCE CERTIFICATION

Pursuant to Fed. R. Civ. P. 37 and Local Rule 37.2 the undersigned counsel has engaged in a series of conversations regarding deficiencies in Experian's Amended Responses to Plaintiff's Requests for Production of Documents. On June 28, 2017, Plaintiff filed his motion to compel Experian to further respond to Plaintiff's First Set of Requests for Production of Documents. D.E. 52. On July 17, 2017, following oral arguments on Plaintiff's motion, the Court ordered Experian to provide Plaintiff with an amended privilege log. D.E. 56. Pursuant to the Court's order, on July 27, 2017, Experian's counsel provided a Supplemental Privilege Log for its Amended Responses to Plaintiff's First Set of Requests for Production (the "Privilege Log").[1] (*See*, July 27, 2017 letter

---

[1] This letter was erroneously dated June 27, 2017 and should have been dated July 27, 2017, when it was received via email by Plaintiff's counsel.

1

attached as Exhibit A; *see also*, Privilege Log attached as Exhibit B.) On August 23, 2017, in an attempt to come to a resolution without this Court's involvement, Plaintiff's counsel wrote a letter to Experian's counsel outlining said deficiencies and requesting production of the unprivileged communications and attachments corresponding to Privilege Log Entries. (*See*, August 23, 2017 letter attached as Exhibit C.) On August 28, 2017, Plaintiff and Defense counsel conferred pursuant to Fed. R. Civ. P. 37 via telephone conference call, during which they effectively "agreed to disagree" regarding the scope of the privilege Experian seeks to invoke.

On August 30, 2017, Experian's counsel wrote a response letter to Plaintiff's counsel in which Experian maintained its position relative to the Privilege Log apart from enclosing Entries 2 and 4 with the letter. (*See*, August 30, 2017 letter attached as Exhibit D.) Despite numerous consultation efforts and good faith attempts to resolve their differences, the parties are unable to reach an accord. Thus, this Court's involvement is necessary.

## ARGUMENT

### I. Employee-to-Employee Communications Are Not Privileged Under *Upjohn Co. v. United States* and Must Be Produced

Experian has failed to meet its burden of establishing attorney-client privilege and this Court's involvement is necessary to determine whether its designations are correct. Entries 1, 3, 4, 11, 16-18, 22-28, 59-64, 66 and 77-78 of the Privilege Log must be produced as they are not subject to the attorney-client privilege pursuant to *Upjohn Co. v. United States*, 449 U.S. 383 (1981). In *Upjohn*, the Court held that attorney-client privilege extends to employees who communicate to the attorney at the direction of their superiors for securing legal advice. 449 U.S. at 394. The Supreme Court's holding in *Upjohn* does not pertain to employee-to-employee communications such as those at issue here.

The holding of *Upjohn* is inapposite to the case at bar. Unlike in *Upjohn*, where the questionnaires at issue were distributed directly to the company's employees by the attorney, the emails and attachments at issue here are from one employee to another employee without any attorney involvement or direction. *Id*. at 394-95. The Court held that attorney-client privilege extends to employees who communicate to the attorney at the direction of their superiors for securing legal advice. *Id.* at 394. The significant difference in that case is that the communications in contention were the result of investigation documents between employees and the attorney directly. Pursuant to the holding of *Upjohn*, communications between employees which are not directed at counsel for purposes of seeking legal advice are not privileged. Although emails between counsel and an employee may be privileged on the basis that the employee is reporting facts to facilitate the provision of legal services and/or advice, *Upjohn* does not support the proposition that employee-to-employee communications constitute this same facilitation of legal advice. In fact, *Upjohn* does not support Experian's claim that communications between non-lawyers are privileged, even if they are facilitating an investigation at the direction of an attorney. Since the communications at issue here are between employees only, or between employees where an attorney was merely copied, the holding of *Upjohn* is inapplicable. *See*, *e.g.*, *Steele v. Lincoln Financial Group*, 2007 U.S. Dist. LEXIS 25587, at *2 (N.D. Ill. 2007) (finding that the copying of the attorney on an email between employees was not the test of privilege). Accordingly, the emails and attachments in contention must be produced.

Assuming *arguendo* that *Upjohn* could extend to employee-to-employee communications, the "Explanation" provided for several of the Entries in the Privilege Log indicates that the communications were not made with the purpose of facilitating an investigation at the direction of an attorney and would not be privileged. *See*, *Wierciszewski v. Granite City Ill. Hosp. Co*., 2011

U.S. Dist. LEXIS 128772, at *4-6 (S.D. Ill. Nov. 7, 2011) (finding that communications of employees amongst themselves for the purposes of obtaining information that might later be disclosed to counsel are not protected by the attorney-client privilege). For example, the Explanation for Entry No. 1 simply states: "Email forwards prior emails that include privileged information regarding WSAC investigation." *See*, Exhibit B. This in no way indicates that Ms. Howell forwarded emails to Ms. Dietrich for the purpose of an investigation directed by an attorney and it certainly does not describe a situation in connection with legal advice. Undoubtedly, it could not be said that Ms. Dietrich believed Ms. Howell was providing her with status so Experian could obtain legal advice or that they were being questioned by an attorney for that purpose. Additionally, with respect to Entry No. 11, Mr. Nenninger could not have believed his email providing Ms. Ford and Ms. Hepburn with a "status of WSAC investigation" was sent for the purpose of an investigation directed by an attorney. There would be no reason for Mr. Nenninger to give non-attorney employees the status report if the report was in fact connected with an attorney-directed investigation. Likewise, the communications covered by Entries 3, 4, 6, 17, 18, 25, 26 and 27 could not have been made for the purpose of an investigation directed by an attorney. The senders and recipients of those communications could not have been aware that the communications were being made for Experian to obtain legal advice.

      Experian's privilege designation inappropriately attempts to extend the scope of *Upjohn*. Communications between employees which are not directed at counsel for the purposes of seeking legal advice are not privileged under *Upjohn*. In fact, courts throughout the Seventh Circuit have found such communications to be outside the attorney-client privilege. *See, E.g.*, *Wierciszewski v. Granite City Ill. Hosp. Co*., 2011 U.S. Dist. LEXIS 128772 (S.D. Ill. Nov. 7, 2011) (where the court found deemed communications of employees amongst themselves for the purposes of

4

obtaining information that might later be disclosed to counsel were not subject to the attorney-client privilege, and explained that *Upjohn* does not suggest that communications between employees not directed at counsel for purposes of seeking legal advice are privileged); *see also, Jentz v. ConAgra Foods, Inc.,* 2011 U.S. Dist. LEXIS 127546 (S.D. Ill. Nov. 3, 2011*)* (where the court held that communications were not privileged when the corporation failed to demonstrate that the documents were anything more than an independent summary provided by a non-attorney employee). Moreover, there is no indication in the Privilege Log that the investigative summaries written by Experian employees related to the WSAC investigation were produced on behalf of, or at the behest of an attorney. The Privilege Log fails to demonstrate that these communications are anything more than independent summaries provided by non-attorney employees. *See*, *Consolidation Coal Co. v. Bucyrus-Erie Co.,* 89 Ill. 2d 103 (Ill. 1982) (proving the validity of a privilege claim rests with the party seeking the exemption). As such, the communications at issue cannot fall within the scope of the attorney-client privilege and must be produced.

Additionally, although eight (8) employee-to-employee emails copy David Strauss, Esq. (Entry Nos. 11, 59-64 and 77), merely copying counsel on an email does not automatically make an item privileged. *See*, *Miller UK, Ltd. v. Caterpillar, Inc*., 2015 U.S. Dist. LEXIS 16418, at *3 (N.D. Ill. Feb. 11, 2015) ("copying a lawyer on an otherwise non-privileged communication, will not transform the non-privileged communication or attachment into a privileged one, even if the otherwise non-privileged communication was at the behest of the lawyer.").

The only support provided by Experian's counsel for the proposition that non-attorney employee-to-employee communications are privileged is inapposite and erroneous. In his August 30, 2017 correspondence, Experian's counsel cites to *Equity Residential v. Kendall Risk Mgmt.* 246 F.R.D. 557, 567 (N.D. Ill. 2007) for the proposition that non-attorney employee to employee

communications can be privileged. *See*, Exhibit D. That decision, however, is distinguishable from the present case in multiple respects. First, the *Equity Residential* court applied Connecticut law to determine that certain employee to employee communications can be privileged, stating that "…Connecticut law provides greater protection to these communications than Illinois law." *Id.* at 565. Second, in upholding the privilege the court specifically found that the communications were made "regarding the company's legal advice" and that they "directly relate[ed] to the legal advice given to the non-attorneys." *Id.* at 567. This certainly does not appear to be the case with respect to the communications at issue here. *See, e.g.,* Entry Nos. 2, 4 and 11 (containing an explanation of why WSAC was terminated, summaries and a status report of Experian's WSAC investigation). These Explanations provide no indication that the communications were made regarding legal advice or that they were "directly relate[ed]" to legal advice. Third, the court found that the subject communications were "kept in confidence". *Id.* at 567. Here, there is no indication that the employee to employee communications were kept in confidence. In fact, it appears they were not kept in confidence given that higher level employees such as Mr. Maher and Mr. Nenninger, were freely providing lower level employees, such as Ms. Dietrich, Ms. Ford and Ms. Hepburn with summaries and status reports on the WSAC investigation. *See,* Entry Nos. 4 and 11**.** Finally, the court found that the "non-attorneys are otherwise protected by the privilege" a finding which, as explained *supra*, relied on Connecticut law.

Experian's counsel also cites *Roth v. Aon Corp.*, 254 F.R.D. 538, 541 (N.D. Ill 2007) to argue that the subject communications are privileged. The *Roth* decision, however, did not involve non-attorney employee to employee communications such as those at issue here. Rather, the *Roth* court considered an email sent by non-attorney Aon employee Bolger to, among others, Aon's Deputy General Counsel Barry. *Id.* at 539. The email forwarded Bolger's Memo to, among others,

6

Aon's General Counsel, regarding the "Compensation for Services" section of Aon's Form 10-K to be filed with the Securities Exchange Commission. *Id.* The court cited Barry's affidavit to explain that "he received the Bolger e-mail in his role as Deputy General Counsel in order to seek legal advice concerning the draft 10-K disclosure", and that he "reviews this information 'primarily to permit me to offer legal advice concerning whether the content of the proposed disclosures are consistent with or required by the federal securities laws.'" *Id.* Thus, the employee to attorney/attorney to employee communications at issue in *Roth* were nothing like the employee to employee communications at issue here, most of which don't even copy an attorney.

Further, Experian's counsel's following quote from *Roth* is out of context: "In a corporate structure, there may be many individuals who must consult with one another so that all relevant information is known before making a legal decision." In the immediately preceding sentence the *Roth* court cited to *Upjohn*, as follows: "[P]rivilege exists to protect not only the giving of professional advice to those who can act on it but also <u>the giving of information to the lawyer</u> to enable him to give sound and informed advice." *Id.* at 541. Here, by contrast, none of the subject communications are described as conveying information to a lawyer to enable him to give Experian advice.

Moreover, the court in both cases used an analysis which this court, at Experian's counsel's urging, has previously rejected. In *Equity Residential*, when comparing and contrasting between Connecticut law Illinois law, the court applied the Control Group Test, the very analysis which opposing counsel criticized Plaintiff for "harkening back" to in its initial motion to compel and which has been rejected by the Supreme Court. *See*, D.E. 62. In *Roth*, the court held that the non-attorney employees copied on the email were "directly concerned with" the matter of the Form 10-K disclosures. 254 F.R.D. at 542. This analysis, regarding employees who are "directly concerned

7

with" or "directly responsible for" the information contained in the communications, is the very argument asserted by Plaintiff in his initial motion to compel which opposing counsel objected to. *See*, D.E. 62. Not only do these cases used in support of Experian's contention fail to follow *Upjohn*, but they directly repudiate the very arguments made by Experian previously with regard to attorney-client privilege. Notwithstanding the paradox of Experian's flawed logic, the discrepancies between these cases and the case at bar show that it has failed meet its burden of establishing attorney-client privilege. Accordingly, Entries 1, 3, 4, 11, 16-18, 22-28, 59-64, 66, 77-80[2] of the Privilege Log must be produced.

## II. Communications Concerning Experian's Business Decision Regarding Western Sierra Are Not Privileged and Must Be Produced

All communications pertaining to Experian's purported "second stage" of its "investigation" must be produced as they are not in furtherance of legal advice. In his July 27, 2017 correspondence, Experian's counsel explained that Experian conducted an investigation in two "stages", the second of which was in "November and December 2011 as Experian considered Datamyx/Tranzact's request to extend WSAC and whether Experian could or should continue to [sic] business with WSAC." *See*, Exhibit A. As such, Entries 3, 4, 12, 13-14, 16-18, 45-46, 66-67, 78-79, 81 and 82 are communications corresponding to the second investigation stage. This "investigation", however, pertained only to Experian's business decisions regarding whether to continue to do business with WSAC, and thus none of the communications corresponding thereto are protected by the attorney-client privilege.

The attorney-client privilege is limited to situations in which the attorney is acting as a legal advisor—business and financial advice are not protected. *Burden—Meeks v. Welch*, 319 F.3d

---

[2] Experian's counsel withdrew its work product privilege designation for Entry 79 and relying only on the attorney-client privilege for this document. *See*, Exhibit D.

897, 899 (7th Cir.2003) (stating that "[f]ederal law extends the privilege to communications about legal subjects, and it is hard to see why a business evaluation meets that description"); *See, Rehling v. City of Chicago,* 207 F.3d 1009, 1019 (7th Cir. 2000) (attorney-client privilege is limited to situations in which the attorney is acting as legal advisor and not in business capacity). As stated in Defense counsel's letter, these communications pertain to a business evaluation by Experian (i.e., whether to continue to do business with WSAC). Thus, these communications are not primarily legal in nature. Although several of these communications include attorneys as senders or recipients, this is not enough to cloak said communications under the guise of attorney-client privilege given that they pertain to a mere business decision by Experian. The attorney-client privilege does not protect business advice, even when the advice is given by an attorney. *See, Rehling v. City of Chicago*, 207 F.3d 1009, 1019 (7th Cir. 2000) (where the attorney-client privilege did not apply when general counsel gave legal advice to others for a business decision). Because these communications concerning the "second stage" of the investigation relate to business advice, all associated communications must be produced.

Moreover, "tasks such as interviewing, inspecting, and engaging in conversations prior to the imminent prospect of litigation generally remove the attorney's activities from the purview of the attorney-client privilege." *Wartell v. Purdue Univ*., 2014 U.S. Dist. LEXIS 100855, at *14 2014 (N.D. Ind. July 24, 2014). Here, Experian employees acted as independent investigators conducting investigations with respect to Experian's consideration of Datamyx/Transact's request to extend WSAC and whether Experian should continue to do business with WSAC. The Privilege Log does not reflect that any of Experian's in-house attorneys were giving legal advice by conducting the investigation. Rather, they had employees conducting an internal investigation so

that Experian could determine how to respond to Datamyx/Transact's request. Accordingly, these communications are not protected by the attorney-client privilege and must be produced.

Even if Experian's attorneys weighed in on these communications with some legal advice, the communications are still not privileged. "The attorney-client privilege protects only communications related to the giving or seeking of legal advice; funneling other communications past an attorney will not make them privileged. Where a document is prepared for simultaneous review by legal and non-legal personnel and legal and business advice is requested, it is not primarily legal in nature and is therefore not privileged." *Baxter Travenol Labs., Inc. v. Abbott Labs.*, 1987 U.S. Dist. LEXIS 10300, at *5 (N.D. Ill. June 19, 1987). The investigation to which these communications pertain relate to Experian's future business concerns with WSAC. Thus, these emails are not primarily legal in nature. Because these communications are in furtherance of the "second stage" of the investigation, and since the investigation pertains to business advice, Experian must produce the communications and attachments corresponding to Entry Nos. 3, 4, 12, 13-14, 16-18, 45-46, 66-67, 78-79, 81 and 82.

### III. Alternatively, *In Camera* Review of The Documents is Warranted

Notwithstanding the foregoing, in the event there is still a question as to whether Experian has sufficiently carried its burden of proof to warrant its assertion of attorney-client privilege, this Court should review the subject documents *in camera*. "Only when the district court has been exposed to the contested documents and the specific facts which support a finding of privilege under the attorney-client relationship for each document can it make a principled determination as to whether the attorney-client privilege in fact applies." *American Nat. Bank and Trust Co. of Chicago v. Equitable Life Assur. Soc. of United States*, 406 F.3d 867, 880 n. 7 (7th Cir. 2005). "Since the [attorney-client] privilege… makes the search for truth more difficult by preventing

disclosure of what is often exceedingly relevant and probative information, they are narrowly construed, and limited to those instances where it is necessary to achieve their purposes. Given Illinois' 'strong policy of encouraging disclosure,' it is 'the privilege, not the duty to disclose, that is the exception,' and thus the privilege is construed 'within its narrowest possible limits.'" *Slaven v. Great Am. Ins. Co.*, 2015 U.S. Dist. LEXIS 33591, at *9 (N.D. Ill. Mar. 18, 2015) (quoting *Waste Management, Inc. v. International Surplus Lines Insurance Co.*, 144 Ill.2d 178, 190, (Ill. 1991)) (internal citations omitted).

A significant question exists regarding whether Experian carried its burden. In addition to the arguments presented *infra*, this is illustrated by documents produced by Experian. In Experian's counsel's August 30, 2017 letter, he stated: "we have conducted further review of Experian's privilege log and are producing Entries 2 and 4 in conjunction with this letter." Exhibit D.[3] The communication corresponding to Entry 2 clearly is not an email which "reflects and contains communications used to facilitate the provision of legal advice and/or services" as described on the Privilege Log. *See*, Exhibit B; *see also* October 17, 2011 email attached hereto as Exhibit E. Further, there is no trace of information "regarding investigation launched and conducted at the request of the Legal Department and for the Legal Department" as purported by Experian in the Privilege Log. *Id.* The parties and this Court spent a vast amount of time and resources devoted to conferences, letters and a hearing before Experian "conducted further review" and subsequently produced this communication, which only serves to confirm that this communication was never privileged. Given that the description provided for Entry 2 on the Privilege Log mirrors the description of every other Entry at issue, an *in camera* review of the is

---

[3] Contrary to Experian's counsel's statement, the communication produced as "Entry 4" does not match up with the Privilege Log as it is a different date (December 22, 2011 rather than December 5, 2011) and amongst different senders and recipients. This discrepancy is all the more reason for this Court to conduct an *in camera* review.

warranted to determine whether the contested documents are actually privileged or if they are being unjustifiably kept from Plaintiff as exemplified by the communication corresponding to Entry 2. *See*, Exhibit B.

### **CONCLUSION**

For the foregoing reasons, the communications at issue are not privileged. Accordingly, Experian must produce Entries 1, 3, 4, 11-14, 16-18, 22-28, 45-46, 59-64, 66-67, and 77-82 of the Privilege Log. Plaintiff respectfully requests that: (i) the Court compel the production of the subject communications, or alternatively conduct an *in camera* review of same to determine which communications must be produced, and (ii) require Experian to pay Plaintiff's reasonable expenses incurred in making this motion, including attorneys' fees.

Dated: September 8, 2017                                     Respectfully submitted,

                                                            By: /s/ Joseph Messer, Esq.
                                                            Joseph Messer (IL 6200036)
                                                            Messer Strickler, Ltd.
                                                            225 W. Washington St., Suite 575
                                                            Chicago, IL 60602
                                                            (312)334-3442 (direct)
                                                            (312)334-3473 (fax)
                                                            jmesser@messerstrickler.com
                                                            Attorney for Plaintiff

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 8, 2017, I electronically filed the foregoing with the Clerk of the District Court using the CM/ECF system, which will send notification of such filing to the attorneys of record.

By: /s/ Joseph S. Messer
Joseph S. Messer
Messer Strickler, Ltd.
225 W. Washington St. Ste. 575
312-334-3469
312-334-3473 (fax)
IL # 6200036
jmesser@messerstrickler.com
