IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| QUENTIN CRABTREE<br>Individually and on behalf of others<br>similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>EXPERIAN INFORMATION<br>SOLUTIONS, INC.<br><br>    Defendant. | No. 1:16-cv-10706<br><br>Hon. Charles R. Norgle, Sr.<br>Magistrate Judge M. David Weisman |

## MEMORANDUM OPINION AND ORDER

Plaintiff Quentin Crabtree moved for entry of an order compelling Defendant Experian Information Solutions, Inc. to further respond to Plaintiff's First Set of Requests for Production of Documents. For the reasons set forth below, the Court generally denies Plaintiff's motion.

### Background

Defendant conducted an internal investigation at the request of in-house counsel between September 22, 2011 and October 17, 2011 concerning one of its users, Western Sierra Acceptance Corporation ("WSAC"). (*See* Dkt. 76 at p. 2.) As part of the investigation, Defendant's employees gathered information from various departments to aid counsel in providing legal advice about Defendant's business relationship with WSAC. Defendant ultimately decided to end its association with WSAC, but extended the termination date to mid-December 2011 to accommodate one of its agents, Tranzact Information Services ("Tranzact"), whose business would be significantly impacted by the change. (*Id.*) As the termination date approached, Defendant revisited the issue and discussed with its attorneys the legal implications

1

of a continued relationship, triggering a "second stage" investigation in November and December of 2011. (*Id.*) The reconsideration included returning to the initial investigation results as well as evaluating regulatory implications of maintaining a business relationship. Although Defendant found no compliance concerns, it nonetheless proceeded with the termination after learning that Tranzact's clients were no longer comfortable conducting business with WSAC.

Plaintiff filed a motion to compel requesting that the Court (i) compel the production of certain documents concerning both stages of the investigation, or alternatively conduct an *in camera* review, and (ii) order Defendant to pay Plaintiff's reasonable expenses for bringing the motion. (*See* Dkt. No. 68.) Defendant filed its opposition brief requesting that the Court deny Plaintiff's motion and grant Defendant its expenses incurred in responding. (*See* Dkt. No. 76.) The Court heard oral arguments on October 17, 2017. (*See* Dkt. No. 83.)

## Discussion

The party asserting privilege has the burden to demonstrate its existence. *Slaven v. Great Am. Ins. Co.*, 83 F. Supp. 3d 789, 796 (N.D. Ill. 2015).[1] The Court finds that Defendant has met its burden. Plaintiff, relying almost exclusively on *Upjohn Co. v. United States*, 449 U.S. 383 (1981), argues that Defendant's assertion of attorney-client privilege is too broad. According to Plaintiff, *Upjohn* "does not support [Defendant's] claim that communications between non-lawyers are privileged, even if they are facilitating an investigation at the direction of an attorney." (*See* Dkt. 68 at p. 3.)

---

[1] The Court agrees with both parties that federal common law applies as to privilege in this matter because Plaintiff has sued under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"). *See* Fed. R. Evid. 501 ("The common law – as interpreted by United States courts in the light of reason and experience – governs a claim of privilege . . . ."); Proposed Fed. R. Evid. 503(b).

As Defendant asserts, the legal underpinning of Plaintiff's argument, however, is erroneous. *Upjohn* is not the apex of the scope of attorney-client privilege as applied to internal corporate communications. Rather, it is arguably the genesis. Indeed, subsequent case law developed from *Upjohn* confirms that communications between non-lawyer employees often warrant protection from disclosure. *See, e.g.*, *Heriot v. Byrne*, 257 F.R.D. 645, 665 (N.D. Ill. 2009). Application of the privilege turns on whether "'the communications rest on confidential information obtained from the client, or would reveal the substance of a confidential communication by the client.'" *Id.* Although direct lawyer involvement is not required for the privilege to attach, a lawyer must have "some relationship to the communication such that the communication(s) between the non-lawyer employees would 'reveal, directly or indirectly, the substance of a confidential attorney-client communication.'"[2] *Id.* at 666 (quoting *In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. 407, 433 (N.D. Ill. 2006) (noting that the "privilege issue is not settled by authorship or participation")).

The Court finds that Defendant appropriately designated as privileged the communications between its non-lawyer employees. The descriptions on the log for each of these entries make clear that the challenged documents (1) relate to the investigation "launched and conducted at the request of the Legal Department and *for the Legal Department*" and/or (2) "reflect[] and contain[] communications used to *facilitate the provision of legal advice* and/or services" (emphasis added). (*See* Dkt. 68 at Exh. B.) Contrary to Plaintiff's assertion that Defendant's descriptions are boilerplate, Defendant has provided enough information about each

---

[2] Plaintiff contends that the communication between non-lawyer employees must be "at the direction of an attorney" to warrant a privilege designation. (*See* Dkt. 68 at p.3.) That, however, is not the standard. As discussed, the communication need only reveal "directly or indirectly" the substance of an attorney-client communication. *See Heriot*, 257 F.R.D. at 665. Even if it were the standard (which it is not), Defendant's explanations for applying privilege establish that the communications were made "at the request of the Legal Department and for the Legal Department." (*See* Dkt. 68 at Exh. B.)

communication to show why privilege attaches without simultaneously destroying privilege by sharing too much. Defendant's employees gathered information to assist counsel with rendering legal advice about how to proceed with WSAC. Defendant later used confidential information gathered during the initial investigation when it sought additional legal advice about WSAC. Throughout both phases, employees collected facts that presumably relied on Defendant's confidential information and those facts were eventually channeled to counsel to aid in the provision of legal services. Defendant provided enough information to conclude that the withheld documents are tied, even if indirectly, to legal advice rendered by counsel.

Additionally, the Court finds that Plaintiff's speculation as to the amount of legal advice in certain "business communications" is unfounded. Plaintiff contends that communications relating to Defendant's "second stage" investigation are not privileged because they pertain to business advice Defendant received about its relationship with WSAC. (*See* Dkt. 68 at p. 8.) Defendant argues that due to the highly regulated environment in which it operates, Defendant understandably sought legal advice about a significant business decision to ensure any action it took complied with FCRA regulations. (*See* Dkt. 76 at 9.)

The Court agrees with Defendant that the identified "business communications" were properly withheld. The attorney-client privilege protects an attorney's "legal advice about a business decision." *Perius v. Abbott Labs.*, No. 07 C 1251, 2008 WL 3889942, *7 (N.D. Ill. Aug. 20, 2008); *see also Marusiak v. Adjustable Clamp Co.*, No. 01 C 6181, 2003 WL 21321311, at *2 (N.D. Ill. June 5, 2003) ("While it is true that solely personal or business advice is not protected by the attorney-client privilege, legal advice relating to business matters clearly is."). Courts in this district have employed the following test to distinguish business from legal advice: "[A] matter committed to a professional legal adviser is prima facie so committed for the

sake of legal advice . . . and is therefore within the privilege unless it appears to be lacking in aspects requiring legal advice." *Weeks v. Samsung Heavy Indus., Ltd.*, No. 93 C 4899, 1996 WL 288511, at *2 (N.D. Ill. May 30, 1996); *see also Stafford Trading, Inc. v. Lovely*, No. 05-C-4868, 2007 WL 611252, at *2 (N.D. Ill. Feb. 22, 2007). Here, the privilege protection is warranted based on Defendant's representation that withheld documents concerning the second stage of the investigation contain discussions about the legal implications of certain business decisions, including whether to continue working with WSAC. Plaintiff has presented nothing beyond speculation to challenge Defendant's contention that the disputed entries are appropriately designated.

The Court notes one deficiency in Defendant's supplemental privilege log that Plaintiff did not specifically address. Entry Number 14 lacks a sufficient explanation to justify a privilege designation. Entry No. 14 is an attachment to an email regarding the second stage of the investigation, but the only explanation provided is that it is an "[a]ttachment to a privileged email." (*See* Dkt. 68 at Exh. B.) An attachment, however, needs to have its own privilege basis. *Muro v. Target Corp.*, No. 04 C 6267, 2006 WL 3422181, at *5 (N.D. Ill. Nov. 28, 2006) ("The attachments, like the primary document, need to meet the privilege standard to be withheld from discovery."). The Court orders Defendant to supplement its privilege log as to Entry Number 14 within 7 days. Plaintiff has leave to file a motion for relief, renewing any objections as to Entry No. 14, within 7 days of receiving Defendant's supplemental privilege log.

The Court will not conduct an *in camera* review of the documents at issue. Plaintiff failed to establish a well-founded basis for challenging Defendant's privilege designations, and Plaintiff is not entitled to an *in camera* review simply because he requested one. Absent an

5

initial showing that such a review is warranted, the Court will not require Defendant to undertake the burden of producing documents to the Court for an independent examination.

Finally, the Court chooses not to award fees to either party for expenses incurred filing or responding to Plaintiff's motion. Under Federal Rule 37(a)(5)(A), the Court shall order the payment of reasonable expenses if a motion to compel is granted unless the opposing party's nondisclosure was "substantially justified." The same standard applies against the movant under Rule 37(a)(5)(B) if the motion to compel is denied – the payment of fees shall be ordered unless the motion was "substantially justified." The test for substantial justification as it applies to Rule 37(a) is whether there is a "'genuine dispute.'" *See Pierce v. Underwood*, 487 U.S. 552, 565 (1988). A genuine, good faith dispute exists regarding Defendant's withheld documents and thus the payment of fees under Rule 37(a) is not appropriate.

## Conclusion

For the reasons set forth above, the Court denies Plaintiff's motion to compel [68].

**SO ORDERED.**          **ENTERED:**

**DATE: 10/20/17**

*M. David Weisman*

**M. David Weisman**
**United States Magistrate Judge**